## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

    **RONALD K. WATKINS**

                              **Case No. 1:21-BK-00068**

    **Debtor,**                          **Chapter 7**

---

**RONALD K. WATKINS,**

            **Plaintiff,**

v.                              **Adversary Proceeding:_____**

**BROKER SOLUTIONS INC. d/b/a**
**NEW AMERICAN FUNDING,**

    **Defendant.**

## ADVERSARY PROCEEDING COMPLAINT

This is an action arising out of a practice known as predatory lending, whereby a national lender exploits an unsophisticated consumer by persuading him to enter into an unwise refinancing agreement secured by the consumer's home and failing to provide him the disclosures so he can understand the material terms of the transaction. In this case, the Defendant flipped Plaintiff—a vulnerable, disabled man—into two mortgage loans over a period of 15 months that more than doubled Plaintiff's prior mortgage obligation, stripped him of his home equity, and nearly doubled his monthly payments despite his low Social Security fixed income. In doing so, Defendant suppressed central features of the loan, including that they were divesting Plaintiff of ownership of his property, failed to provide him the required disclosures, and otherwise misrepresented the basic terms of the loan, and now, have failed to rescind the loan despite Plaintiff giving notice of his rescission. Plaintiff brings this action to save his home and for other appropriate relief.

## PARTIES

1.     Plaintiff: Ronald Watkins is disabled. Mr. Watkins lives on a monthly fixed income of $786 in the home at issue at 307 Bellview Avenue, Fairmont, West Virginia, 26554. Plaintiff is unsophisticated in financial and mortgage matters.

2.     Lender/Servicer/Holder: Defendant Broker Solutions Inc. d/b/a New American Funding ("New American Funding") is a California company operating out of 14511 Myford Rd., Ste 100, Tustin, CA, 92780. New American Funding was the originating lender, is the current servicer of the loan, and as result of repurchasing the loan, is currently the holder.

## STATEMENT OF FACTS

**Home Purchase and Refinancing**

3.     In 2009, Plaintiff bought his family home for $30,000, located at 307 Bellview Avenue, Marion County, WV 26554.

4.     In or around January 2016, Plaintiff obtained a mortgage from Fairmont Federal Credit Union (FFCU) for $35,000 at 3.75% interest for 20 years, to refinance his land contract.

5.     The monthly payment on this mortgage was $207.51, or about a quarter of his fixed income.

**Defendant New American Funding Unconscionably Induces Plaintiff to Refinance**

6.     In or around May 2018, Defendant New American Funding mailed Plaintiff a solicitation letter, and it instructed Plaintiff to contact Defendant New American Funding's agent, Nancy Rehse, to apply for a loan with Defendant New American Funding. At that time, Plaintiff's debts other than his mortgage with FFCU consisted primarily of unsecured credit card debt.

7.     Defendant New American Funding pressured Plaintiff to refinance his home loan to pay off his unsecured debt. Defendant New American Funding, through its agent Nancy Rehse, offered financial advice to Plaintiff, assuming the role as a fiduciary with corresponding duties.

8.      Defendant's agent, Nancy Rehse, should have advised, or not suppressed from, Plaintiff, who was on a fixed income, that converting his unsecured, dischargeable debt into a secured interest was not in his best interest.

9.      In violation of the duty owed to Plaintiff, Defendant New American Funding unconscionably and fraudulently induced Plaintiff into a loan that doubled Plaintiff's home indebtedness to $60,000, increased his interest rate to 5.375%, and increased Plaintiff's monthly payments to $381.99, more than half his monthly income. Refinancing Plaintiff's loan was not in his best interest.

10.     Upon information and belief, New American Funding included illegal points, fees, and finance charges, in violation of state law, nor did the loan provide Plaintiff any net tangible benefit.

11.     This dramatically increased home secured debt and payment placed Plaintiff's home at risk.

**Defendant New American Funding Flipped Plaintiff Just One Year Later**

12.     Approximately one year later, in the spring 2019, Defendant New American Funding's agent, Nancy Rehse, illegally solicited Plaintiff again, seeking to flip Plaintiff into another refinance loan so as to obtain additional fees and profits from Plaintiff.

13.     New American Funding and Rehse already knew through its prior loan origination that Plaintiff was the sole owner of his home and lived on a fixed monthly income of $786.00, without any supplements or additional income from his son.

14.      New American Funding and Rehse knew or should have known the creation of additional debt secured by Plaintiff's home was not in Plaintiff's best interest and would not provide him any net tangible benefit given the circumstances.

15.     In pursuit of efforts to flip Plaintiff's mortgage loan, Defendant New American Funding's agent Rehse asked Plaintiff whether his home needed any repairs, and then advised Plaintiff that he could get a new roof if he refinanced his year-old loan.

16.     Plaintiff agreed to apply for a refinancing loan, on Rehse's advice.

17.     New American Funding and Rehse advised Plaintiff that Plaintiff's son was required to sign some documents in order to facilitate the loan transaction.

18.     New American Funding and Rehse thereby revealed that they knew another refinance would likely result in Plaintiff's default on the new loan because of his limited income, and they wished to drag his son into the transaction to increase the likelihood that the loan could be collected if it went into default.

19.     Plaintiff did not understand and New American Funding and Rehse did not clearly disclose the reasons New American Funding and Rehse wanted Plaintiff's son on the loan. Had they done so, Plaintiff would not have gone through with flipping his loan.

20.     New American Funding and Rehse suppressed and did not disclose their intention to have Plaintiff quit claim half his ownership in the home to his son at closing, in order to facilitate their scheme. Had Defendant New American Funding done so, Plaintiff would not have agreed to the loan.

**Defendant Suppress Loan Terms from Plaintiff**

21.     Defendant New American Funding's loan file contains a loan application with an electronic signature from Plaintiff's son, dated June 17, 2019.

22.     Plaintiff has no knowledge about whether Plaintiff's son had provided authorization for use of his signature or reviewed the document before the electronic signature was attached.

23.     Defendant New American Funding further failed to obtain consent from Plaintiff to provide the information electronically.

24.     Upon information and belief, New American Funding did not provide any pre-closing disclosures to Plaintiff.

25.     The application listed only Plaintiff's son as the borrower and provided no information about Plaintiff; instead leaving the section for "co-borrower" blank. Although Plaintiff's son had no previous ownership interest or a previous loan, the application listed that Plaintiff's son was refinancing.

26.     Oddly, other documents related to the loan application bear the electronic signature of Plaintiff, with the same date, identifying him as the sole borrower.

27.     The statutorily required Loan Estimate, setting forth the estimated terms of the loan, is signed solely by Plaintiff's son also on June 17, 2019.

28.     During the entire origination process for the loan, Plaintiff and his son were clear and explicit that Plaintiff alone would be making the payments on the loan out of his limited monthly fixed income.

29.     New American Funding and Rehse falsely reassured Plaintiff and Plaintiff's son several times that the payments were such that Plaintiff could handle them, when their own actions revealed that they knew that was not true.

30.     Plaintiff and son continued the transaction in reasonable reliance on the truth of these representations. Had Defendant New American Funding told them the truth, Plaintiff would not have consummated the loan.

31.     Shortly before the loan closing, additional documents were provided to Plaintiff's son—but not Plaintiff—to review and sign.

32.     New American Funding did not provide Plaintiff pre-closing disclosures.

33.     These documents bear an e-signature of Plaintiff's son, dated August 5, 2019.

**Closing**

34.     On or around August 8, 2019, Plaintiff was instructed that Defendant's agent would visit Plaintiff's home to conduct the closing.

35.     Present at the closing were only Defendant's closing agent, Matthew Gilliland, Plaintiff's son, and Plaintiff. Defendant and Gilliland had an agreement for Gilliland to act on Defendant's behalf to carry out Plaintiff's closing, and Defendant asserted control over Gilliland.

36.     Plaintiff understood that Gilliland was acting at the closing on behalf of Defendant, and Plaintiff relied on Gilliland to handle the closing on behalf of Defendant.

37.     Despite not having received or signed any mandatory material pre-closing disclosures, Plaintiff, the actual homeowner, was named as borrower on the loan and was jointly liable for payments on the loan.

38.     At the closing, one of the extensive packet of documents that Gilliland presented for Plaintiff's signature was a Quit Claim Deed, transferring a one-half interest in Plaintiff's home to his son.

39.     Plaintiff did not realize what this document was or why he was being instructed to sign it. Gilliland did not draw Plaintiff's attention to or describe the deed or explain in any way the reason for it or its significance.

40.     The deed was prepared by a Wisconsin entity not licensed to practice law in West Virginia, and notarized by Gilliland.

41.     Gilliland, the closing agent, was not an attorney nor was he acting under meaningful supervision of an attorney.

42.     Gilliland did not, and as a non-attorney *could not*, afford Plaintiff a meaningful opportunity to understand the essential terms and impact of the transaction.

43.     Plaintiff did not understand the contents, significance, or import of the documents that were presented to him for signature at closing, nor were the terms of the many documents shown for his signature explained in a fashion he could understand.

44.     After the closing, Gilliland did not provide Plaintiff with copies of the closing documents, instead explaining that they would be mailed to him.

45.     At the closing, Defendant failed to make required disclosures of the loan's terms, in the form, manner, and time mandated by the Truth in Lending Act and Regulation Z.

46.     Moreover, Defendant failed to provide Plaintiff with required notices of his right to rescind the loan, in the manner and fashion required by the Truth in Lending Act and Regulation Z, which included the disclosures, given the loan took a security interest in Plaintiff's principal residence.

47.     At no time after that closing did Defendant ever provide Plaintiff with notices of his right to rescind the mortgage loan that included additional, supplemental, or corrected disclosures.

48.     Plaintiff was unaware of his entitlement to these disclosures and of Defendant's failure to comply with the obligations under the Truth in Lending Act and Regulation Z until he sought the assistance of counsel.

49.     By failing to provide the loan documents, Defendant further continued its suppression of the actual terms and impact of the loan from Plaintiff.

**Impact**

50.     As a result, Plaintiff was not aware that, in the loan, pursuant to a pattern and common practice, New American Funding willfully contracted for, imposed, received and/or

collected illegal and/or illegal fees, charges, and costs, including undisclosed fees and/or settlement costs up-charged, in violation of West Virginia law.

51.     The transaction:

(a)  increased Plaintiff's home secured indebtedness to $78,703.00, more than doubling the amount of the lien from the FFCU loan originated just a few years prior.

(b)  included illegal points, fees, and finance charges, in violation of state law, like prior origination fees and points for the May 2018 loan. *See* W. Va. Code § 31-17-8(d). Defendant charged $1,629 for a lender fee and $609.95 for points.

(c)  required Plaintiff to pay for FHA/PMI insurance that was undisclosed;

(d)  required Plaintiff to pay for appraisals of $500 and a subsequent $150.00 for inspection.

(e)  charged Plaintiff attorney's fees.

(f)  charged Plaintiff $10.50 for a borrower identity validation, a credit report fee of $20.00, and a verification services charge of $85.00, amounts that are duplicative, unnecessary, nor bona fide.

(g)  required Plaintiff to pay $300.00 for an illegal closing fee;

(h)  increased Plaintiff's total monthly payment to $539.08, which is almost 69% of Plaintiff's monthly income of $786.

(i)  transferred Plaintiff's property his son, such that his son now has control over whether Plaintiff sells or refinances his home and the right to any remaining equity in the property.

52.     Although Plaintiff was promised the proceeds for a new roof, Plaintiff was not told by Defendant the onslaught of the adverse impacts on him.

53. Although the closing documents appear to include a purported "Net Tangible Benefit Disclosure," the analysis is made out for Plaintiff's son. Moreover, there is no indication that the purported disclosure was ever actually disclosed, given that it is unsigned.

54. There was, in fact, no reasonable tangible net benefit to Plaintiff of the loan, which increased his indebtedness and increased his payments to an unaffordable level.

55. To date, Plaintiff has never been provided the required pre- and post-disclosures.

56. After the loan's origination, Plaintiff began making payments on the loan.

57. Plaintiff thereafter made his first monthly payment using the proceeds from the loan. However, after Plaintiff received his second monthly statement, Plaintiff discovered that the monthly payments were unaffordable.

58. However, given that the payment requires the majority of his monthly income, he has struggled to manage the high payment for the long term.

59. Plaintiff now faces an unaffordable mortgage and now accrued a delinquency that is insurmountable.

**Request for Information, Notice of Error, and Notice of Right to Cure Violations**

60. By letter dated October 1, 2020, consistent with the requirements of section 46A-5-108 of the West Virginia Code, Plaintiff advised New American Funding of its legal violations and requested information regarding his loan.

61. By letter dated October 12, 2020, New American Funding acknowledged receipt of the letter.

62. Instead of responding with a meaningful response, New American Funding told Plaintiff to retrieve his own documents from New American Funding's website.

63.     However, the documents were not available by this method or otherwise provided to Plaintiff.

64.     By letter dated December 14, 2020, Plaintiff again, consistent with the requirements of section 46A-5-108 of the West Virginia Code, sent another letter to New American Funding.

65.     On January 25, 2021, Defendant New American Funding provided an incomplete response to this request, including the various origination documents listed above.

66.     This was the first time Plaintiff obtained any of his origination documents.

67.     The documents did not include a variety of highly relevant documents, including various origination documents and disclosures and information about whether Defendant New American Funding complied with the loan terms in servicing the loan.

68.     Despite knowing that Plaintiff was represented by counsel, Defendant have directly solicited and contacted Plaintiff in an attempt to collect a debt on May 9, 2021; May 14, 2021; May 19, 2021; and May 9, 2022.

69.     Additionally, although Nancy Rehse is not licensed to originate loans in West Virginia, Rehse, on behalf of New American Funding, solicited Plaintiff for refinancing in May 2022.

**Notice of Rescission**

70.     On June 2, 2022, Plaintiff and the Trustee for the Bankruptcy Estate provided Plaintiff's written notice of rescission in accord with the law, writing "[t]his is notice that the Borrower rescinds the August 8, 2019 loan (Loan No. [redacted]) on the Borrower's home at 307 Bellview Avenue, Fairmont, WV 26554. Please contact Michael Nissim-Sabat regarding your next steps and for the Borrower's tender, if any. Thank you."

71.     At no time since New American Funding's receipt of that notice has it taken the actions required by 15 U.S.C. § 1635, including formally releasing the Deed of Trust encumbering Plaintiff's home. Rather, New American Funding provided Plaintiff's counsel with a response that included only Plaintiff's Notice of Right to Cancel, and no other disclosures.

72.     Accordingly, New American Funding has failed to comply with the Truth in Lending Act and the legal options and rights that this failure afforded Plaintiff.

73.     Moreover, although Plaintiff's obligations to pay any sums on the mortgage became legally void, New American continues to misrepresent that sums are owed, to Plaintiff's injury.

**Injury**

74.     Plaintiff has been injured by Defendant's conduct, including by now risking loss of his home to foreclosure due to the unaffordable payments, and suffered significant worry and stress, annoyance and inconvenience, and financially damaged, and repetitive injuries to his legal rights, including rights under West Virginia Residential Mortgage Lender, Broker, and Servicer Act, W. V. Code § 31-17, and the West Virginia Consumer Credit and Protection Act, W. V. Code §§ 46A-2 and -3 et. seq. and/or implementing regulations of those statutes.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I – ILLEGAL LOAN**

75.     Plaintiff incorporates the previous paragraphs by reference.

76.     The West Virginia Residential Mortgage Lender, Broker, and Servicer Act was enacted with a legislative intent to protect West Virginia homeowners from predatory lending. *Quicken Loans, Inc. v. Walters for Walters*, 239 W.Va. 494, 501, 801 S.E.2d 509, 515-516 (2017).

77.     The Act does so by (1) restricting the permissible actions of mortgage lenders and servicers; and (2) by creating statutory licensing and supervisory protections for borrowers. *Id*.

78.     As a remedial statutory system enacted to promote the public good, West Virginia law requires the Act and its provisions be liberally construed and applied in the public's favor to achieve its purposes. *See McElroy Coal Co. v. Schoene*, 240 W.Va. 475, 813 S.E.2d 128 (2018); *Ogden Newspapers Inc. v. City of Williamstown*, 192 W. Va. 648, 651, 453 S.E.2d 631, 634 (1994).

79.     W. Va. Code § 31-17-8 explicitly sets out the only charges, fees, and costs which the West Virginia Legislature permitted lenders, brokers, or servicers of West Virginia residential mortgages to contract for, collect, or impose.

80.     Defendant New American Funding, as a part of the loan transactions executed on May 14, 2018, and August 8, 2019, required Plaintiff to pay illegal loan origination fees, investigation fees, and points, in violation of West Virginia Code section 31-17-8(d). Defendant required Plaintiff, in August 2019, to pay again a lender fee ($1,629), points ($609.95), and a re-inspection fee ($150).

81.     Defendant New American Funding further required Plaintiff to pay for, including, but not limited to, undisclosed FHA/PMI insurance; fees for a borrower identity validation, a credit report fee, and a verification services charge; and a closing fee, in violation of West Virginia Code section 31-17-8.

82.     Consequently, at all times after origination, the loan and Deed of Trust at issue has been subject to the limitations on fees, charges, and costs imposed on residential mortgage loans by W. Va. Code Chapter § 46A-3; by the law under which regulated lender New American Funding was permitted to originate the loan, W. Va. Code Chapter § 46-4; and by W. Va. Code Chapter § 31-17.

83.     Defendant New American Funding violated these prohibitions by asserting, charging, and/or collecting default related and other fees and costs not permitted by contract and

law, including attorney's fees.

84.     Plaintiff has and continues to be injured by these wrongful actions.

85.     Defendant's violation of West Virginia Code § 31-17-8 was knowing and intentional, and further violated West Virginia Code §§ 46A-3 and 46A-4.

86.     Plaintiff was damaged as a result of Defendant's violation of West Virginia Code sections 31-17-8, 46A-3 and 46A-4.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

      (a)     The Court declare the loan void and unenforceable;

      (b)     Return of payments;

      (c)     Actual damages;

      (d)     Reasonable attorney's fees and the cost of this action; and

      (e)     Such other relief as the Court deems equitable and just.

**COUNT II – UNCONSCIONABLE INDUCEMENT**

87.     Plaintiff incorporates the preceding paragraphs by reference.

88.     Plaintiff and Defendant occupy dramatically unequal bargaining positions, including that:

      (a)     Plaintiff is an unsophisticated consumer.

      (b)     Defendant New American Funding is a large national lender engaged in the business of making home secured loans.

89.     The contract was formed without a true meeting of the minds, and was induced by unconscionable conduct, including:

      (a)     Plaintiff's financial unsophistication and limited ability to understand financial transactions;

(b)     The contract at issue is adhesive and drafted by Defendant New American Funding;

(c)     Defendant's misrepresentations and suppressions about the essential terms of the loan as alleged;

(d)     Depriving Plaintiff of his sole ownership rights in the property;

(e)     A closing conducted in a manner which did not provide Plaintiff a reasonable opportunity to understand the terms and conditions of the loan being presented.

(f)     Misrepresentation and/or suppression to Plaintiff that the loan was providing the Plaintiff a benefit;

(g)     The loan closing that did not involve:

    i.   review and/or preparation of documents consistent with state and federal law;

    ii.   provision of proper disclosures prior to or after the consummation;

    iii.   provision of legal services to ensure the transaction complied with the law; and

    iv.   an explanation of the documents or terms of the loan or in order to provide Plaintiff with a reasonable opportunity to understand the transaction, such that he was unaware of the loan terms and impact.

90.     Under the circumstances alleged, the contract contains substantively unconscionable and commercially unreasonable terms, which came as a surprise to the Plaintiff, including Defendant suppressing and misrepresenting the true terms, value, and impact of the mortgage from Plaintiff; providing inaccurate and incomplete disclosures; and conducting a brief closing without an attorney present and without meaningful explanation of the documents; and

Defendant placed Plaintiff in a worse position than his prior financing, thus making refinance impossible and foreclosure a likelihood, such that there was no true meeting of the minds.

91.     The loan was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore is unenforceable.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)     A declaration that Plaintiff's loan was induced by unconscionable conduct and/or contained unconscionable terms, and that it is thus unenforceable, pursuant to W. Va. Code § 46A-2-121(1);

(b)     Actual damages equivalent to the amount paid plus amount claimed due under the loan, and incidental and consequential damages;

(c)     A civil penalty of and reasonable attorney fees and the cost of this litigation pursuant to W. Va. Code §§ 46A-5-101(1), -104, & -106;

(d)     Appropriate equitable relief; and

(e)     Such other relief as the Court may deem equitable and just.

**COUNT III – COMMON LAW CONTRACT DEFENSE OF UNCONSCIONABILITY**

92.     Plaintiff incorporates the preceding paragraphs by reference.

93.     Plaintiff and Defendant occupy dramatically different bargaining positions.

94.     Defendant New American Funding is a large company engaged in the business of originating mortgages, while Plaintiff is an unsophisticated consumer.

95.     The contract was formed without a true meeting of the minds, and was induced by unconscionable conduct, including:

(a)     Plaintiff's financial unsophistication and limited ability to understand financial transactions;

(b)     The contract at issue is adhesive and drafted by Defendant;

15

(c)     Defendant's misrepresentations and suppressions about the essential terms of the loan as alleged;

(d)     Depriving Plaintiff of his sole ownership rights in the property;

(e)     Misrepresentation and/or suppression to Plaintiff that the loan was providing the Plaintiff a benefit;

(f)     The loan closing that did not involve:

i.     review and/or preparation of documents consistent with state and federal law;

ii.     provision of proper disclosures prior to or after the consummation;

iii.     provision of legal services to ensure the transaction complied with the law; and

iv.     an explanation of the documents or terms of the loan or in order to provide Plaintiff with a reasonable opportunity to understand the transaction, such that he was unaware of the loan terms and impact.

96.     Under the circumstances alleged, the contract contains substantively unconscionable and commercially unreasonable terms, which came as a surprise to the Plaintiff, including Defendant suppressing and misrepresenting the true terms, value, and impact of the mortgage from Plaintiff; providing inaccurate and incomplete disclosures; and conducting a brief closing without an attorney present and without meaningful explanation of the documents; and Defendant placed Plaintiff in a worse position than his prior financing, thus making refinance impossible and foreclosure a likelihood, such that there was no true meeting of the minds.

97.     The documents were adhesive and drafted by Defendant New American Funding.

98.     The contract, that is, the deed of trust, is procedurally and substantively unconscionable, and thus cannot be enforced as written.

**WHEREFORE,** Plaintiff respectfully requests that the Court declare the deed of trust unenforceable.

### COUNT IV – FRAUD

99.     Plaintiff incorporates the preceding paragraphs by reference.

100.    New American Funding and its agents intentionally suppressed and misrepresented the terms of the transaction for purpose of inducing Plaintiff into the contract.

101.    Defendant intentionally misrepresented to Plaintiff that it was a reputable lending entity that followed commercially acceptable lending practices and/or intentionally suppressed that it failed to follow commercially acceptable lending practices in the origination of Plaintiff's loan.

102.    Defendant misrepresented that Plaintiff was getting a reasonable, tangible net benefit, misrepresented the necessity of including Plaintiff's son on the loan, and then depriving Plaintiff of his sole ownership of the home.

103.    Defendant misrepresented charging Plaintiff origination fees, points, and other illegal finance charges.

104.    Defendant suppressed the true terms, value, costs, and impact of the loan, and suppressed the proper disclosures.

105.    Defendant's misrepresentations and suppressions were knowing, reckless, and/or intentional; and they were material.

106.    Plaintiff reasonably relied upon the origination of the loan being consistent with prudent lending practices when entering into the loan agreement.

107.     Plaintiff was damaged by Defendant's fraudulent conduct, including being trapped in a loan without the ability to refinance for a lower payment or interest rate, and by having Plaintiff's unsecured debts converted into a secured debt.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a)    Actual damages;

    (b)    Punitive damages;

    (c)    Reasonable attorney fees and the cost of this litigation; and

    (d)    Such other relief as the Court may deem equitable and just.

### COUNT V – ILLEGAL DEBT COLLECTION

108.     Plaintiff incorporates all of the preceding paragraphs by reference.

109.     Defendant is a debt collector as defined by section 46A-2-122 of the West Virginia Code and, thus, subject to the provisions of sections 46A-2-122 to 46A-2-129a of the West Virginia Code, regulating debt collection practices.

110.     Defendant used fraudulent, deceptive, or misleading representations or means to collect or attempt to collect or to obtain information concerning Plaintiff, including, but not limited to the following, failing to provide information and misrepresenting that the loan was being serviced in accordance with the contractual requirements and commercially reasonable business practices; and representing payments are allegedly due on a void contract, in violation of section 46A-2-127 of the West Virginia Code.

111.     In violation of section 46A-2-128 of the West Virginia Code, Defendant has used unfair or unconscionable means in efforts to collect a debt, including, but not limited to refusing to provide loan information substantiating their claims that Plaintiff owes on his account in response to Plaintiff's multiple written requests for the same; failing to release its security interest; and directly contacting Plaintiff after receiving notice that Plaintiff was represented by counsel.

**WHEREFORE**, Plaintiff respectfully request the following relief:

(a)     Maximum civil penalties for each violation pursuant to sections 46A-5-101(1) and -106 of the West Virginia Code;

(b)     Actual damages;

(c)     Reasonable attorney's fees and the cost of this litigation; and

(d)     Such other relief the Court deems equitable and just.

## COUNT VI – RESCISSION

112.     Plaintiff incorporates all of the preceding paragraphs by reference.

113.     Defendant New American Funding arranged for the closing of the loan to take place at Plaintiff's home.

114.     At the closing, Defendant failed to make required material disclosures of the loan terms, in the form, manner, and time mandated by the Truth in Lending Act and Regulation Z.

115.     Defendant failed timely and accurately to deliver all material disclosures of credit terms in the form and manner, and at the time, required by the Truth in Lending Act and Regulation Z, including but not limited to mandated disclosures of credit terms and proper notices of Plaintiff's right to cancel, as required under 15 U.S.C. § 1638, 15 U.S.C. § 1635(a), and Regulation Z, 12 C.F.R. § l026.23(b).

116.     At no time after that closing did New American Funding ever provide Plaintiff with notices of his right to rescind the mortgage loan that included the required disclosures.

117.     At no time after August 8, 2019, did Defendant provide sufficient disclosures to Plaintiff concerning this loan or these disclosure and notice requirements, and had not yet expired as of June 2, 2022, when Plaintiff sent a proper, valid, and effective notice of rescission of the credit transaction in accordance with law.

118.     Plaintiff was unaware of his entitlement to these disclosures and of New

American's failure to comply with its obligations under the Truth in Lending Act and Regulation Z.

119.     Defendant has failed to take the actions required of it by 15 U.S.C. § 1635.

**WHEREFORE**, Plaintiff respectfully the following relief:

(a)     A judgment declaring that the August 8, 2019 loan transaction was validly and effectively rescinded as a matter of law on June 2, 2022;

(b)     A judgment declaring that at all times after June 2, 2022, Plaintiff was not liable to New American for any amount, including any finance or other charge, and that any security interest in Plaintiff's principal dwelling at 307 Bellview Avenue, Fairmont, West Virginia, 26554, relating to or arising from a Deed of Trust or by operation of law, was and has been void and unenforceable since that date as a matter of law;

(c)     A judgment requiring New American Funding to take all steps necessary to clear the record title of Plaintiff's home from any such security interest and return all payments;

(d)     A judgment enjoining New American Funding from any and all actions seeking to enforce or collect through any means, directly or indirectly, any right or claim it might assert or could have asserted under or in connection with the August 8, 2019 loan;

(e)     Reasonable attorney's fees and the cost of this litigation; and

(f)     Such other relief the Court deems equitable and just.

## COUNT VII – FAILURE TO HONOR RESCISSION

120.     Plaintiff incorporates all of the preceding paragraphs by reference.

121.     On June 2, 2022, Plaintiff lawfully and timely rescinded the August 8, 2019 loan transaction with New American Funding by serving a proper, valid, and effective written notice of rescission.

122.    More than twenty (20) calendar days passed thereafter without New American Funding terminating the security interest in Plaintiff's home created by that transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z, 12 C.F.R. §1026.23(d)(2).

123.    New American Funding has also failed and refused otherwise to honor Plaintiff's lawful and valid notice of rescission, including by continuing to claim he is obligated to it for amounts pursuant to the August 8, 2019 loan transaction, and/or that such loan continues to be lawfully secured by an interest in Plaintiff's home.

124.    As a result, New American Funding has violated the Truth in Lending Act and Regulation Z, all to Plaintiff's continuing injury and forfeited any right to payment of any tender or other sum by Plaintiff.

WHEREFORE, Plaintiff requests the following relief:

(a)    Statutory damages of $4,000 pursuant to 15 U.S.C. § 1640(a)(2)(A);

(b)    An award of actual and compensatory damages pursuant to 15 U.S.C. § 1640;

(c)    Reasonable attorney's fees and the cost of this litigation; and

(d)    Such other relief the Court deems equitable and just.

## COUNT VIII – ACTION TO QUIET TITLE AND/OR PERMITTING EQUITABLE REDEMPTION

125.    Plaintiff incorporates all of the preceding paragraphs by reference.

126.    The May 2018 and August 2019 loans were conducted in violation of the law.

127.    The loan originations by Defendant were accomplished through fraud and/or unconscionable and inequitable conduct.

128.    Thereafter, Plaintiff lawfully rescinded the August 2019 loan and New American Funding has failed to release the deed of trust to Plaintiff, the rightful owner of the property.

129.    New American Funding is prohibited from collecting upon the loan thereafter.

130.    As the result, rightful title to the property and the right of equitable redemption remains with Plaintiff.

**WHEREFORE**, Plaintiff requests the Defendant take all steps necessary to clear the record title of Plaintiff's home from any such security interest and such other relief the Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiff,**

**RONALD K. WATKINS,**
**By Counsel:**

/s/Michael Nissim-Sabat
Michael Nissim-Sabat (WV State Bar No. 12233)
Bren Pomponio (WV State Bar No. 7774)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, West Virginia 23501
Telephone: (304) 344-3144
Facsimile: (304) 344-3145
*Counsel for Ronald K. Watkins*